**Huel GROOMS, Appellant,**

v.

**WORKMEN'S COMPENSATION BOARD et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 23, 1970.

Louis V. Mangrum, Mayfield, for appellant.

Terrell, Schultzman & Hardy, Paducah, for Gibson's Locker Plant and Ham Co.

Thomas R. Emerson, Department of Labor, Frankfort, for Department of Labor.

REED, Judge.

Huel Grooms appeals from a judgment of the circuit court that upheld an award to him by the Workmen's Compensation Board. The board awarded Grooms partial disability and apportioned liability between Gibson's Locker Plant and Ham Company, the employer of Grooms at the time of the latest alleged injury, and the Special Fund. Grooms asserts that he was entitled to permanent and total disability subject to credit for payments made for a prior disability by a previous employer. We affirm the board and the circuit court.

Grooms filed a claim for workmen's compensation benefits from his employer, Gibson's Locker Plant and Ham Company, alleging that he injured his back when he leaned over to pick up a ham while engaged in his employment. He stated that the alleged work-connected event happened on October 19, 1967. Grooms also made the Special Fund a party to his claim because, according to him, he had sustained a previous injury to his back for which he received compensation benefits from a previous employer on the basis of a permanent partial disability of 16½ per cent (KRS 342.120).

Grooms complained of a low back injury while working as a grocery store clerk for a Piggly Wiggly store in June of 1966. In October of 1966, he claimed that he sustained a back injury while lifting a bag of clay in the course of employment with Old Hickory Clay Company. He filed a claim for compensation against Old Hickory and while it was pending went to work for the Gibson Company. In the trial of his claim against Old Hickory, he testified in May of 1968. At that time he stated that he was totally disabled. He testified under oath that when he went to work for the

Gibson Company he could only do light work; he categorically denied being injured while working for Gibson. With the approval of the board, this claim against Old Hickory was settled on the basis of a 16½ per cent partial disability.

In his new claim for permanent and total disability against Gibson, Grooms undertook to retract all of his sworn statements in the Old Hickory case. He introduced his brother and his son for the purpose of impeaching his directly inconsistent prior testimony. His latest story was that he was doing heavy work for Gibson in October 1967; that he had fully recovered from his prior back trouble; that he injured his back when he started to lift a ham on October 19, 1967.

Four physicians testified in Grooms's latest claim. Dr. August Geise, a neurosurgeon, was introduced by Grooms as his only medical witness. Dr. Geise testified that Grooms had lied to him and that he had been "pretty much led astray." Dr. Geise said that Grooms had some disability but he did now know how severe it was or when it occurred. Dr. Geise testified on redirect examination: "This man has lied to me in his history taking, he has lied fairly badly I would say when I asked him categorically about previous back trouble. I don't know what to believe." Doubtless, the present counsel for Grooms was shocked by the Old Hickory testimony and the proof of Dr. Geise, for he had not represented Grooms in the Old Hickory claim.

Dr. Hillary Hunt, an orthopedic surgeon, testified that he treated Grooms for the Old Hickory injury. Dr. Hunt said that each time Grooms had problems with his back was not a separate injury but a re-aggravation of a continuing process which originated some time in the past. Dr. Steele Robbins stated that he had examined and treated Grooms for an injury to the lower back in 1966; this tended to refute the statement of Grooms that this treatment was for a shoulder injury.

The board appointed Dr. George E. Ainsworth, an orthopedic surgeon, as the independent board-appointed physician to report on questions of disability and apportionment (KRS 342.121). Dr. Ainsworth reported that Grooms had a 50 per cent permanent partial disability which he categorized as follows: 20 per cent due to previous injury; 20 per cent due to the arousal of "a nondisabling condition," and 10 per cent due to the alleged injury of October, 1967. Only Grooms filed exceptions to Dr. Ainsworth's report. The board found disability and apportionment in accordance with Ainsworth's report.

The proof demonstrates that throughout his work career Grooms had been employed sporadically in various nonskilled activities. These activities include driving a truck for Old Hickory, farm work, work in a furniture factory, grocery store clerk, lumber company worker, tobacco warehouse worker, and he is presently employed pumping gasoline in a service station. His occupation classification is unskilled general labor. It appears that he is presently engaged in this occupational classification, although he states that this work causes him discomfort. The board had adequate substantial evidence on which to base his occupational disability. Crib Diaper Service v. Standifer, Ky., 436 S.W.2d 501 (1969); Walsh v. John F. Humphrey Co. et al., Ky. (decided October 6, 1970).

It is axiomatic that the board is the fact finder in these cases. If its function as fact finder is to have any meaning whatever it must of necessity determine the credibility of the evidence before it. The evidence of Grooms lacked credibility in several important aspects, if one desires to be charitable in description. The board's findings cannot be set aside unless they are clearly erroneous. The board's award was generous. Grooms is hardly in position to question the board's findings as clearly erroneous.

The judgment is affirmed.

All concur.